IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ECOLAB INC. and ECOLAB USA INC., | )<br>)<br>) |
| Plaintiffs, | ) Civil Action No. 4:24-cv-40107<br>) |
| v. | )<br>) **JURY TRIAL DEMANDED** |
| IBA, INC. and WEBCO CHEMICAL CORPORATION, | )<br>)<br>) |
| Defendants. | )<br>) |

## COMPLAINT

Plaintiffs Ecolab Inc. and Ecolab USA Inc. (collectively, "Ecolab"), by and through their undersigned counsel, bring this Complaint against Defendants IBA, Inc. ("IBA") and Webco Chemical Corporation ("Webco") (collectively, "Defendants"), and state and allege as follows:

### NATURE OF THE ACTION

1.   Ecolab is the global leader in water, hygiene, and infection prevention products and services. Around the world, businesses in a variety of industries, including the dairy industry, choose Ecolab products and services to keep their environment clean and safe, operate efficiently, and achieve sustainability goals. Among other solutions, Ecolab offers a number of products and services to dairy farms and dairy processing customers, including acidified sodium chlorite (ASC) teat dip products.

1

2. Ecolab, and its predecessor in interest Alcide Corporation ("Alcide")[1], spent years developing and improving ASC teat dip products, methods of manufacturing such products, methods of testing such products, and other methods and techniques used to ensure the efficacy and quality of such products.

3. Pursuant to confidentiality obligations, Ecolab's valuable trade secrets were shared with Defendant IBA, who distributed Ecolab ASC teat dip products, and Defendant Webco, who manufactured Ecolab ASC teat dip products for IBA.

4. After decades of using Ecolab's trade secrets to manufacture Ecolab ASC teat dip products, in 2022, Webco began manufacturing and IBA began distributing competitive ASC teat dip products.

5. Upon information and belief, in violation of their duty of confidentiality and with full knowledge of the confidential and proprietary nature of the Ecolab Trade Secrets (defined below at ¶ 21) that had been shared with them, IBA and Webco used and continue to use Ecolab Trade Secrets to at least develop, make, and test their competitive ASC teat dip products, causing harm to Ecolab.

## PARTIES

6. Plaintiff Ecolab Inc. is incorporated in the State of Delaware and has a principal place of business at Ecolab Global Headquarters, 1 Ecolab Place, St. Paul, Minnesota 55102.

---

[1] Unless otherwise noted, the term "Ecolab" includes predecessor in interest Alcide.

7. Plaintiff Ecolab USA Inc. is incorporated in the state of Delaware and has a principal place of business at Ecolab Global Headquarters, 1 Ecolab Place, St. Paul, Minnesota 55102.

8. Defendant IBA is incorporated in the Commonwealth of Massachusetts and has a principal place of business at 103 Gilmore Drive, Sutton, Massachusetts 01590.

9. IBA is in the business of providing products and services to the dairy industry.

10. Defendant Webco is incorporated in the Commonwealth of Massachusetts and has a principal place of business at 420 West Main Street, Dudley, Massachusetts 01571.

11. Webco is in the business of contract manufacturing chemical products for customers such as IBA.

## JURISDICTION AND VENUE

12. This is a civil action for misappropriation of trade secrets under the Defend Trade Secrets Act (DTSA), 18 U.S.C. § 1836 *et seq.*; misappropriation of trade secrets under the Massachusetts Uniform Trade Secrets Act (MUTSA), Mass. Gen. Laws ch. 93, § 42 *et seq.*; unfair competition under Mass. Gen. Law ch. 93A §§ 2, 11; and breach of contract.

13. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367 and/or based upon principles of pendent and ancillary jurisdiction.

14. The Court also has diversity jurisdiction pursuant to 28 U.S.C. § 1332 because Ecolab and IBA are citizens of different States; Ecolab and Webco are citizens of different States; and the amount in controversy exceeds $75,000.

15. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because Defendants reside in this judicial district and because a substantial part of the events giving rise to the claims raised in this Complaint occurred in this judicial district.

16. This Court has at general personal jurisdiction over IBA and Webco because both are incorporated in the Commonwealth of Massachusetts and have their principal places of business in Massachusetts.

17. The Court also has specific personal jurisdiction over IBA and Webco because this lawsuit arises out of Defendants' activities occurring within the Commonwealth of Massachusetts, e.g., the development, manufacturing, and testing of ASC teat dip products, which, upon information and belief, used the Ecolab Trade Secrets.

## FACTUAL BACKGROUND

**Ecolab's Trade Secrets**

18. Over the years, Ecolab has invested significant time and effort into developing, improving, and perfecting its ASC teat dip products and the methods of manufacturing the same.

19. These efforts included, *inter alia*, development, optimization, and test verification of formulations; field testing of formulations; selection of raw materials and vendors for the same; creation of product specifications; development of methods of

4

manufacture and validation of the manufacturing processes, including validated test methods; implementation of Good Manufacturing Practices (GMP); development of test methods; and, in general, the development of supporting testing and data.

20. Such efforts are time-intensive, with determination of a formula usually taking 12-18 months and additional development work (after a formula is determined) usually taking another 1-2 years.

21. The result of Ecolab's efforts is extensive know-how regarding at least the following:

   a. product specifications for and methods of manufacture of ASC teat dip products;

   b. specifications for raw materials used in the manufacture of ASC teat dip products;

   c. the sources and vendors of raw materials used in the manufacture of ASC teat dip products;

   d. test methods and testing specifications used in connection with the manufacture and testing of ASC teat dip products;

   e. batch specifications, batch cards, and historical batch testing statistical results relating to ASC teat dip products;

   f. packaging specifications for ASC teat dip products;

   g. the selection, importance, and benefits of using certain materials and methods in the manufacture of ASC teat dip products; and

    h. bills of materials and commercialized formulas related to the manufacture of ASC teat dip products.

Hereinafter, the "Ecolab Trade Secrets."

22. Ecolab's Trade Secrets are valuable assets to Ecolab, and Ecolab has taken reasonable steps to maintain the confidential nature of the Ecolab Trade Secrets. For example:

    a. Ecolab employees are required to sign agreements upon beginning employment with the company that include confidentiality obligations and employees receive ongoing training on maintaining the confidentiality of Ecolab's proprietary information.

    b. Visitors to Ecolab facilities are required to sign in and out, go through security, execute visitor passes acknowledging their duty to maintain the confidentiality of information learned while on premises, and be escorted while in the building by an Ecolab employee.

    c. Ecolab restricts access to certain network areas, limits access to certain portions of buildings to certain employees, and restricts the use of cameras or other recording devices while on premises.

    d. Ecolab requires independent contractors, partners, vendors, suppliers, distributors, and the like to sign nondisclosure or other types of confidentiality agreements.

23. The Ecolab Trade Secrets are not generally known to or readily ascertainable by the public or to other individuals who can obtain economic value from their disclosure.

24. The Ecolab Trade Secrets derive, and have derived, independent economic value from not being generally known to or readily ascertainable by proper means by the public or other individuals who can obtain economic value from their use.

**Defendants had access to the Ecolab Trade Secrets**

25. To facilitate the distribution and manufacture of Ecolab's ASC teat dip products, Ecolab disclosed the Ecolab Trade Secrets to IBA subject to duties of confidentiality and restrictions on use of the Ecolab Trade Secrets.

26. To facilitate the distribution and manufacture of Ecolab's ASC teat dip products, Ecolab permitted disclosure of the Ecolab Trade Secrets to Webco subject to duties of confidentiality and restrictions on use of the Ecolab Trade Secrets.

27. More specifically, Ecolab and IBA entered into an agreement (the "Agreement"), dated April 26, 2002 (and later amended).

28. The Agreement contained confidentiality provisions, which prohibited IBA from disclosing Ecolab's confidential information, including the Ecolab Trade Secrets, to third parties without the prior written consent of Ecolab; required IBA to use a degree of care at least as great as the degree of care IBA takes in protecting its own confidential information and, in no event, no less than a reasonable degree of care; and prohibited IBA from using Ecolab's confidential information, including the Ecolab Trade Secrets, for any commercial purpose other than the purposes covered by the Agreement.

7

29. The Agreement also provided that IBA could utilize a third-party manufacturer, such as Webco, to manufacture Ecolab's ASC teat dip products so long as that third-party manufacturer agreed to the same confidentiality provisions agreed to by IBA. The confidentiality provisions in the Agreement were expressly stated to survive termination of the Agreement and remain in full force and effect today.

30. Ecolab informed IBA and Webco that the Ecolab Trade Secrets were confidential and proprietary to Ecolab.

31. IBA and Webco knew or should have known that the Ecolab Trade Secrets communicated to or received by them were confidential and proprietary to Ecolab and could not be used for any purpose other than in the manufacture of licensed Ecolab ASC teat dip products covered by the Agreement.

**Defendants' unlawful use of the Ecolab Trade Secrets**

32. Despite this knowledge, upon information and belief, IBA and Webco have used the Ecolab Trade Secrets in connection with the development, formulation, validation, testing, and manufacture of non-Ecolab ASC teat dip products, including Ultra-Guard HV, Pro-San, Pre-Sept, and Opti-Guard (collectively, "Defendants' Products").

33. Ultra-Guard HV is an ASC teat dip product recommended for post-milking use and is, upon information and belief, marketed as an equivalent to Ecolab's UDDERgold family of ASC teat dip products.

34. Pro-San is an ASC teat dip product recommended for pre- and post-milking use and is, upon information and belief, marketed as an equivalent to Ecolab's 4XLA ASC teat dip product.

35. Pre-Sept is an ASC teat dip product recommended for pre-milking use and is, upon information and belief, marketed as an equivalent to Ecolab's Pre-Gold ASC teat dip product.

36. Opti-Guard is an ASC teat dip product recommended for pre- and post-milking use and is, upon information and belief, marketed as an equivalent to Ecolab's Aztec Gold ASC teat dip product.

37. IBA has no research and development department and, upon information and belief, employs no chemists or scientists that would have the knowledge required to independently develop an ASC teat dip product.

38. IBA has asserted that development of Defendants' Products began in approximately November of 2021.

39. At that time, IBA and Webco had in their possession the Ecolab Trade Secrets and Webco was simultaneously manufacturing Ecolab ASC teat dip products using the Ecolab Trade Secrets for IBA.

40. IBA has asserted that Pro-San was sold at least as early as January 26, 2022, less than three months after IBA purports to have begun product development.

41. IBA has asserted that Opti-Guard was sold at least as early as February 14, 2022, a little more than three months after IBA purports to have begun product development.

42. IBA has asserted that Ultra-Guard HV was sold at least as early as March 18, 2022, less than five months after IBA purports to have begun product development.

43. IBA has asserted that Pre-Sept was sold at least as early as March 24, 2022, less than five months after IBA purports to have begun product development.

44. Upon information and belief, Defendants were only able to launch Defendants' Products so quickly because of their access to and use of the Ecolab Trade Secrets in connection with the development, formulation, validation, testing, and manufacture of Defendants' Products.

45. Defendants have sold and continue to sell Defendants' Products, which directly compete with Ecolab's ASC teat dip products.

46. Ecolab has been damaged by Defendants' wrongful activities.

## COUNT I – MISAPPROPRIATION OF TRADE SECRETS UNDER THE DTSA

47. Ecolab restates the allegations set forth in paragraph 1-46 and incorporates them herein by reference.

48. The Ecolab Trade Secrets constitute proprietary scientific and technical information that Ecolab has taken reasonable measures to maintain as confidential.

49. The Ecolab Trade Secrets derive independent economic value from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

50. Defendants knew or should have known that the Ecolab Trade Secrets were confidential and proprietary to Ecolab and that they were under a duty to maintain the secrecy of the Ecolab Trade Secrets and to not use them for purposes other than the manufacture and testing of Ecolab ASC teat dip products.

51. Despite this, Defendants used the Ecolab Trade Secrets in the development, formulation, validation, testing, and manufacture of Defendants' Products without the consent of Ecolab.

52. Defendants acquired the Ecolab Trade Secrets by improper means.

53. Defendants used the Ecolab Trade Secrets to compete against Ecolab.

54. The Ecolab Trade Secrets relate to products and services that are used, and intended for use, in interstate commerce.

55. Defendants' Products are used, and intended for use, in interstate commerce.

56. Defendants' actions constitute misappropriation of the Ecolab Trade Secrets in violation of the DTSA.

57. Defendants have maliciously and willfully used the Ecolab Trade Secrets to their own advantage and to the harm of Ecolab.

58. As a direct and proximate result of Defendants' misappropriation, Ecolab has sustained substantial damages in an amount to be determined at trial, and Ecolab will continue to be damaged in the future unless Defendants are permanently enjoined from making, using, or selling Defendants' Products.

## COUNT II – MISAPPROPRIATION OF TRADE SECRETS UNDER MUTSA

59. Ecolab restates the allegations set forth in paragraphs 1-58 and incorporates them herein by reference.

60. The Ecolab Trade Secrets constitute proprietary scientific and technical information that Ecolab has taken reasonable measures to maintain as confidential.

61. The Ecolab Trade Secrets derive independent economic value from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

62. Defendants knew or should have known that the Ecolab Trade Secrets were confidential and proprietary to Ecolab and that they were under a duty to maintain the secrecy of the Ecolab Trade Secrets and to not use them for purposes other than the manufacture and testing of Ecolab ASC teat dip products.

63. Despite this, Defendants used the Ecolab Trade Secrets in the development, formulation, validation, testing, and manufacture of Defendants' Products without the consent of Ecolab.

64. Defendants acquired the Ecolab Trade Secrets by improper means.

65. Defendants used the Ecolab Trade Secrets to compete against Ecolab.

66. Defendants' conduct set forth above constitutes misappropriation of the Ecolab Trade Secrets in violation of MUTSA.

67. Defendants have maliciously and willfully used the Ecolab Trade Secrets to their own advantage and to the harm of Ecolab.

68. As a direct and proximate result of Defendants' misappropriation, Ecolab has sustained substantial damages in an amount to be determined at trial, and Ecolab will continue to be damaged in the future unless Defendants are permanently enjoined from making, using, or selling Defendants' Products.

## COUNT III – UNFAIR COMPETITION UNDER MASS. GEN. LAWS CH. 93A §§ 2, 11.

69. Ecolab restates the allegations set forth in paragraphs 1-68 and incorporates them by reference herein.

70. Defendants' conduct set forth above constitutes unfair competition under Mass. Gen. Laws ch. 93A §§ 2, 11.

71. The circumstances giving rise to this claim primarily and substantially occurred in Massachusetts. The development, formulation, validation, testing, and manufacture of Defendants' Products using the Ecolab Trade Secrets occurred in Massachusetts and, upon information and belief, at Webco's facilities.

72. Defendants are engaged in trade or commerce as defined by Mass. Gen. Laws ch. 93A § 11.

73. Defendants knowingly and willfully engaged in unfair or deceptive trade practices in violation of Mass. Gen. Laws ch. 93A by misappropriating the Ecolab Trade Secret and using them in the marketplace to compete with Ecolab.

74. As a direct and proximate result of Defendants' unfair competition, Ecolab has sustained substantial damages in an amount to be determined at trial, and Ecolab will continue to be damaged in the future unless Defendants are permanently enjoined from making, using, or selling Defendants' Products.

## COUNT IV – COMMON LAW BREACH OF CONTRACT BY IBA

75. Ecolab restates the allegations set forth in paragraphs 1-74 and incorporates them by reference herein.

76. IBA's conduct set forth above constitutes a breach of the Agreement under common law.

77. Ecolab and IBA entered into a valid contract, the Agreement, attached hereto as Exhibit A, on or around April 26, 2002.

78. Four amendments to the Agreement were executed, attached hereto as Exhibits B-E, extending the express term of the Agreement to May 31, 2019.

79. The Agreement included certain confidentiality provisions, including that IBA would not use the confidential information, including the Ecolab Trade Secrets, disclosed by Ecolab for any commercial purpose other than that pursuant to the Agreement without the prior written consent of the disclosing party.

80. The Agreement also provided that IBA shall prevent disclosure in any manner of confidential information, including the Ecolab Trade Secrets, to any third party without prior written consent of Ecolab, and the degree of care taken by IBA to prevent disclosure and protect such information shall be no less than a reasonable degree of care.

81. The Agreement also expressly provided that IBA shall not use Ecolab's Technical Information (defined as all trade secrets, technical reports, and proprietary data, including but not limited to formulations, test results, and know-how for manufacturing), which includes the Ecolab Trade Secrets, for any purpose other than to make, have made, use, sell, and import Ecolab's ASC teat dip products.

82. The confidentiality provisions of the Agreement survive termination of the Agreement indefinitely.

83. IBA breached at least the foregoing provisions of the Agreement by using Ecolab's confidential information, including the Ecolab Trade Secrets, in connection with their development, formulation, validation, testing, and manufacture of Defendants' Products.

84. As a direct and proximate result of IBA's breach of the Agreement, Ecolab has sustained substantial damages in an amount to be determined at trial, and Ecolab will continue to be damaged in the future unless IBA permanently enjoined from making, using, or selling Defendants' Products.

## PRAYER FOR RELIEF

WHEREFORE, Ecolab prays for judgment as follows:

A. Permanently enjoining Defendants from making, using, or selling Defendants' Products, or otherwise using the Ecolab Trade Secrets to develop, formulate, validate, test, or manufacture any ASC teat dip product;

B. Requiring Webco to return to Ecolab all information reflecting the Ecolab Trade Secrets;

  C. Finding Defendants misappropriated the Ecolab Trade Secrets under the DTSA and MUTSA in connection with their development, formulation, validation, testing, and manufacture of Defendants' Products;

  D. Finding Defendants engaged in unfair competition under Mass. Gen. Law ch. 93A §§ 2, 11 in connection with Defendants' Products;

  E. Finding IBA breached the confidentiality provisions of the Agreement in connection with Defendants' Products;

  F. Awarding damages for Defendants' misappropriation of the Ecolab Trade Secrets in connection with Defendants' Products;

  G. Awarding damages for Defendants' unfair competition in connection with Defendants' Products;

  H. Awarding damages for IBA's breach of the Agreement's confidentiality provisions in connection with Defendants' Products;

  I. Finding that Defendants willfully and maliciously misappropriated Ecolab's Trade Secrets and doubling Ecolab's damages award for misappropriation pursuant to the DTSA (18. U.S.C. § 1836) and MUTSA (Mass. Gen. Laws ch. 93 § 42B);

  J. Finding that Defendants willfully and knowingly engaged in acts of unfair competition and awarding treble actual damages under Mass. Gen. Laws ch. 93A § 11;

  K. Awarding Ecolab its reasonable attorneys' fees and costs, including pursuant to the DTSA, MUTSA, Chapter 93A, or any other basis the Court may deem appropriate; and

L.    Awarding Ecolab such other further relief as this Court may deem necessary and proper.

## DEMAND FOR JURY TRIAL

Ecolab hereby demands a trial by jury of all issues so triable.

Dated: August 14, 2024

*Of counsel (pro hac vice admissions forthcoming)*

Rachel Zimmerman Scobie
Anneliese Mayer
Paige S. Stradley
Marra M. Clay
**MERCHANT & GOULD P.C.**
150 South Fifth Street
Suite 2200
Minneapolis, MN 55402-4247
612-332-5300
rscobie@merchantgould.com
amayer@merchantgould.com
pstradley@merchantgould.com
mclay@merchantgould.com

/s /Lisa M. Tittemore
Lisa M. Tittemore (BBO # 567941)
Bryan Harrison (BBO # 696596)
SUNSTEIN LLP
100 High Street
Boston, Massachusetts 02110
ltittemore@sunsteinlaw.com
bharrison@sunsteinlaw.com
(617) 443-9292

*Attorneys for Plaintiffs*
*Ecolab Inc. and Ecolab USA Inc.*